Filed 4/7/25  P. v. Taylor CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VINCENT TAYLOR et al.,<br><br>    Defendants and Appellants. | C099150<br><br>(Super. Ct. No. 21FE011009) |

A jury found defendants Vincent Taylor and Raymond Valentino Butler guilty of murder.  After the close of evidence, a witness recanted his testimony but could not appear in court for several days.  The trial court denied defendants' motion to continue and later their motion for a new trial.  On appeal, defendants challenge these rulings.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendants were found guilty of murder for the shooting death of Terrance Flournoy.  Flournoy was involved in a custody dispute with the mother of his child,

1

resulting in her uncle, defendant Butler, killing Flournoy with his friend, defendant Taylor, soon after communicating with her via text messages and phone calls. The shooting was caught on surveillance footage, although defendants were not clearly depicted in it. Evidence of defendants' association with each other on the day of the shooting came from multiple sources, including cell phone location data; defendant Taylor's fingerprints on the exterior of the passenger door of the getaway car, which was registered to defendant Butler's wife; and home surveillance footage showing defendants together outside defendant Butler's home. Defendant Taylor was found to be the actual shooter, meaning defendant Butler was the driver of the getaway car depicted on the surveillance footage.

One witness saw the shooter when the witness arrived for an appointment at Flournoy's barbershop. The shooter, wearing a mask and hat, approached the witness and told him to get back in his car. After the witness returned to his car, he saw the shooter fire his gun. The witness testified the shooter was taller than six feet two inches and appeared to be over 40 years old given the wrinkles around his eyes and tenor of his voice. Before his death, Flournoy also identified the shooter as a tall, dark man wearing a mask.

Nathan L. testified at trial that he was at a convenience store across the parking lot from the barbershop at the time of the shooting. He testified he could not see the barbershop or the shooter from his vantage point in a recessed area outside the store. After hearing shots, Nathan went to the barbershop and found Flournoy on the ground. Nathan drove Flournoy to the hospital in Flournoy's car. Nathan did not want to testify and was in court because he was subpoenaed to be there. Nathan was unhoused and had been hired by Flournoy in the past to work in his shop.

Over a week after the close of evidence but before closing arguments, Nathan provided a declaration to defendant Butler's wife essentially stating that, at the time of the shooting, he saw a man named Marua, a person he knew to be dangerous, park near

the scene of the shooting in a car matching the car depicted in the surveillance footage. The trial court permitted defendants a one-day continuance (from Tuesday to Wednesday) to investigate the declaration and secure the appearance of Nathan. The next day, Nathan did not appear because he was in Las Vegas celebrating his birthday. Defendant Butler's attorney communicated with Nathan, who assured her he would come back to Sacramento either the following Saturday or Sunday. He also said the reason he did not tell the truth before was because he feared retaliation given his vulnerability as a transient. Nathan also provided a statement to a defense investigator reiterating his declaration and adding that he saw Marua shoot Flournoy before returning to his car and fleeing the scene. Given the time already provided to defendants to secure Nathan's presence, the lack of assurance Nathan would eventually appear in court, and the anticipated delay in securing Nathan's presence, the court denied defendants' request for a continuance to the following week.

Following the jury's guilty verdicts, defendants filed a motion for a new trial based on newly discovered evidence provided by Nathan. At the hearing on the motion, Nathan testified he saw Marua, who he sometimes called Marva, and another person pull into the parking lot before Nathan walked into the convenience store. Before entering the convenience store, Nathan and Marua nodded at each other. According to Nathan, when he left the convenience store, he stood in a recessed area outside the store and heard gunshots. He did not see the shooting. When he walked out of the recessed area, Nathan saw Marua's car driving away with Marua in the passenger's seat. Nathan had known defendant Butler's wife since childhood and approached her with his recantation after trial.

The officer who interviewed Nathan after Nathan took Flournoy to the hospital also testified at the hearing on defendants' new trial motion. According to the officer, Nathan told him that he did not see the shooting or who shot Flournoy. Another officer reviewed the surveillance footage taken from the convenience store and the footage did

3

not depict Nathan nodding at an individual in the parking lot before the shooting. The same officer went to the convenience store and determined Nathan would not have been able to see the barbershop during the shooting or the car fleeing the parking lot after the shooting from his vantage point in the recessed area of the convenience store.

The trial court denied defendants' new trial motion and explicitly found Nathan to be not credible. The trial court sentenced defendant Butler to an aggregate term of 75 years to life plus one year and defendant Taylor to an aggregate term of 125 years to life.

Defendants appeal.

DISCUSSION[1]

I

*The Trial Court Did Not Abuse Its*

*Discretion By Denying Defendants' Motion To Continue*

Defendants contend the trial court abused its discretion when it denied their motion to continue for the purpose of securing the presence of Nathan, the recanting witness. We disagree.

" 'The granting or denial of a motion for continuance in the midst of a trial traditionally rests within the sound discretion of the trial judge who must consider not only the benefit [that] the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.' " (*People v. Zapien* (1993) 4 Cal.4th 929, 972.) Additionally, "When a continuance is sought to secure the attendance of a witness, the defendant must establish 'he[, she, or they] had exercised due diligence to secure the witness's attendance, that the

---

[1] Defendants join each other's argument, and the People do not oppose the joinder. Defendant Butler brings an additional issue he concedes is moot after the trial court issued an amended abstract of judgment.

4

witness's expected testimony was material and not cumulative, that the testimony could be obtained within a reasonable time, and that the facts to which the witness would testify could not otherwise be proven.' " (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.)

"The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked. [Citation.] [¶] Under this state law standard, discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered." (*People v. Beames* (2007) 40 Cal.4th 907, 920.)

The trial court did not abuse its discretion here. Nathan did not contact the defense with his recantation until several days after the close of evidence and then went to Las Vegas such that he could not appear in court to verify his statement or be subjected to cross-examination. While defense counsel communicated with Nathan, Nathan was noncommittal about the date of his return to Sacramento. Given Nathan's prompt departure from town after recanting his testimony and unwillingness to promptly return, it is unclear whether Nathan would eventually appear in court even if he were given additional time to do so. Further, the jury had already been absent from court for over a week before Nathan recanted his testimony and the defense could not secure Nathan's presence until the next week. Given the anticipated delay and Nathan's uncertainty, it did not exceed the bounds of reason for the court to find the requested delay to secure Nathan's presence may not result in his appearance and would result in an undue delay. Accordingly, it was not an abuse of discretion for the trial court to deny defendants' motion to continue. Because the trial court did not abuse its discretion, it further did not deny defendants' due process. (See *People v. Doolin* (2009) 45 Cal.4th 390, 450 [a defendant must show an abuse of discretion and prejudice to demonstrate a due process violation based on denial of a continuance].)

## II

### *The Trial Court Did Not Abuse Its Discretion*
### *By Denying Defendants' Motion For A New Trial*

Defendants contend the trial court abused its discretion when it denied their motion for a new trial based on newly discovered evidence in the form of Nathan's testimony.  We disagree.

" ' "To grant a new trial on the basis of newly discovered evidence, the evidence must make a different result probable on retrial.' " " (*People v. O'Malley* (2016) 62 Cal.4th 944, 1016.)  " ' "[T]he trial court may consider the credibility as well as materiality of the evidence in its determination [of] whether introduction of the evidence in a new trial would render a different result reasonably probable." ' " (*In re Masters* (2019) 7 Cal.5th 1054, 1082, quoting *People v. Delgado* (1993) 5 Cal.4th 312, 329.)

A new trial motion based on newly discovered evidence is disfavored, and denial of such a motion will be affirmed unless the defendant has clearly shown "a manifest and unmistakable abuse of discretion." (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1151.)  " 'A court abuses its discretion if it acts "in an arbitrary, capricious, or patently absurd manner" ' " or " 'when its ruling "falls outside the bounds of reason." ' " (*People v. Thomas* (2023) 14 Cal.5th 327, 399.)  "In addition, '[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence.' " (*People v. Verdugo* (2010) 50 Cal.4th 263, 308; accord, *People v. O'Malley*, *supra*, 62 Cal.4th at p. 1016.)

The trial court did not exceed the bounds of reason by finding Nathan's testimony would not render a different result probable upon retrial.  Importantly, the trial court found Nathan was not a credible witness, and that finding is supported by substantial evidence.  For example, Nathan's testimony at the hearing for the new trial motion conflicted with the convenience store's surveillance footage that recorded Nathan and the car carrying the shooter arrive and leave the convenience store's parking lot.  Nathan's

statements to defense counsel were also inconsistent with his eventual testimony at the new trial hearing—Nathan used inconsistent names for the person he saw and told counsel he saw the shooting but then testified he only heard it. Further, Nathan had a preexisting acquaintance with defendant Butler's wife, potentially demonstrating an element of bias.

Given the trial court's credibility finding, we cannot conclude it is reasonably probable a jury would reject the surveillance footage evidence depicting defendant Butler's wife's car as the getaway car, defendant Butler's motive to help his niece with her custody dispute, and his communications with his niece close in time to the shooting in favor of Nathan's testimony. We further cannot conclude it is reasonably probable a jury would consider Nathan's testimony as undermining the fingerprint, cell phone location, and home surveillance evidence of defendants' association on the day of the shooting and the reasonable inference therefrom that they were together at the shooting. Accordingly, the trial court did not abuse its discretion by denying defendants' new trial motion based on newly discovered evidence.

DISPOSITION

The judgment is affirmed.


/s/ _____
ROBIE, Acting P. J.


We concur:


/s/ _____
RENNER, J.


/s/ _____
WISEMAN, J.*

---

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.